for the appellate is Mr. Weaver and for the appellate is Mr. Steigman. Please proceed. Thank you. Please support Mr. Steigman. Good morning, Justices. My name is Blake Weaver and I represent Ricky Bentley, who is the appellant in this case. Our objection with the trial court's position comes down to we believe the trial court erred in characterizing certain testimony given by Mr. Bentley to be judicial admissions. Our position is that the testimony he gave under oath may be a testimonial admission and may be used as such. But in this case, the trial court found that his testimony should be considered judicial admissions and thereby foreclosing further testimony, explanation, or clarification as to a crucial issue. A crucial issue in this case were certain representations made concerning approval of building plans by the third party plaintiff. The testimony that was given was elicited some four or five months before the third party plaintiff sued Mr. Bentley. The testimony was given in a proceeding by neighbors of the third party plaintiff who were seeking to enjoin her construction of a residence on a property she had purchased from Mr. Bentley. Mr. Bentley, under subpoena, was called to testify on behalf of the third party plaintiff and he gave certain testimony. That testimony, relevant for our purposes, really surrounds what representations were made, whether there was an approval, whether there were certain plans that had been approved by Mr. Bentley with respect to Garlick Building. Our fundamental position is, as I indicated, those statements live, those statements can be offered, those statements can be used by the plaintiff and considered by the court. But at the stage of summary judgment, where we were at, those statements stood in opposition to the pleadings filed in response to the third party plaintiff's complaint and those statements stood in opposition to an affidavit given by Bentley, submitted in support or submitted in opposition to the plaintiff's motion for summary judgment. The crucial issue, I believe, legally is whether or not Bentley should be considered a party. Obviously, he wasn't a party to a lawsuit at the time he gave the testimony. He hadn't been sued. It was argued in the brief that, well this is the same proceeding and so it should be considered part of the same case. Whether or not this is the same proceeding, whether this was a third party complaint or whether it was an independent action filed with a different case number, I think makes little difference. Really the issue is, was Bentley a party at the time he testified? And he clearly was not. That's our objection. We believe that he must live by what he said, but he should be given the opportunity to clarify, explain, and put in context, given the issues that now exist, that testimony. That's our fundamental position and we've cited cases and I'd be glad to discuss any of those with any of you. Secondly, when you talk about a judicial admission given by a party, the law pretty clearly states that it is a deliberate, clear, unequivocal statement by a party about a concrete fact. The fact at issue really arises or is made an issue in paragraph 12 of the third party plaintiff's complaint, which alleges Ricky Bentley acting as architectural control committee with personal knowledge of the restrictive lab covenants approved by your Darla Coulter's building plans specifying the construction of a prefab modular home on Lot 2 of Breezy Meadows. That's the crux of the underlying legal issue. It's our belief that even if you take Bentley's statements and go through the transcript, and you've got to remember that Bentley was called by Darla's attorney, questioned, and then cross-examined by the other side. It's my belief that if you look at the transcript, it's pretty evident that a full and complete, a clear and concise, definite, deliberate statement as to the facts and circumstances concerning whether or not there was an approval of the third party plaintiff's building plans never was elicited at that hearing. So even if this court were to find Bentley should be considered a party, I don't believe those elements which require the statements to be clear, deliberate, concise, definite, whatever, are met in the transcript itself. I believe that the court went too far and found too much regarding this. Finally, with respect to the third point, certain statements were found to be admitted foreclosing certain issues. The approval of plans. The court went on, and one of the certified questions was, did the court err in not then granting the third party plaintiff a finding of liability with respect to the approval of those plans? The court, I think properly, drew the line and said, well, even if he approved the plans, and the plans, in looking at the court's memorandum of judgment from which all this arises, are expressed in Defendant's Exhibit 4. Defendant Third Party Plaintiff's Exhibit 4 offered at the hearing. And nowhere on that exhibit, and apparently nowhere, and actually nowhere in the transcript, does it talk about those plans being the plans for a prefab or modular home. The reason why the injunction was issued in the other case was restrictive covenants prevented or did not allow a prefab home to be erected on the lot that Charlotte Poulter bought. So, even if you find everything he said regarding the plans and the process, and whether he approved them or didn't approve them, the court found there was no evidence on the plan, on the exhibit, or any statement by Bentley that he was asked to approve plans for a prefab or modular home. So I believe that portion of the court's ruling was erroneous. Other than that, I'm ready to sit down unless you have some questions. I don't believe so. Thank you. Mr. Stiglitz. I notice that both of you are a little bit taller. And there is a button there you can raise on the side of the podium. You can raise the podium up if you wish. On this side? Right in front. Oh, I see. And it's electric. Very nice. May it please the court, Mr. Weaver. David Stiglitz here for the appellee, Darla Poulter. And where I want to begin, I know Mr. Weaver addressed a lot of factual issues, and I think it's pretty clear in my position to agree. But as I revisited and went back to the clear and concise text of Supreme Court Rule 308 in preparation for today's argument, it was very clear that for a Rule 308 appeal that only certified questions of law, that where a substantial difference of opinion exists, only those questions are appropriate for this court and for this panel of justices to decide here. So what we're talking about for a Rule 308 appeal is questions of law, not questions of law in fact, not questions of fact. So inasmuch as Mr. Weaver disagrees with the trial court's findings of fact, it's my position and Poulter's position that it's not necessary. It's the trial court's findings of fact which are appropriate, which are pertinent, concise, and very well reasoned by the trial judge, Judge Schunkweiler, and of course the trial level. And what we're here to decide, and essentially what the parties have briefed here, is the legal issues. And when you review the legal issues, and you can still review the legal issues de novo, and as the first one, did the trial court correctly grant Poulter the judicial admissions that are set forth in the trial court's memorandum of order and opinion? And specifically, the six judicial admissions that Judge Schunkweiler at the trial court level set forth. So the analysis doesn't need to reach back beyond the trial court's findings of fact. And if in fact the trial court felt it needed to, then of course this court needs to look to see if Judge Schunkweiler's findings were against the manifest weight of the evidence and not relitigate the entirety of the facts of this case. And so then, the six judicial admissions that Judge Schunkweiler sets forth in trial court opinion, in fact do those constitute judicial admissions, or should they be evidentiary admissions? And of note in Bentley's reply brief, short, concise, and to the point, two issues here is in fact the filing of a counter-affidavit in response to motion for summary judgment. When in fact that counter-affidavit directly contradicts either prior sworn testimony or a prior deposition, does that filing in itself create a fact issue? And of course we have some direction here. I think all the parties have cited Small v. Village of Addison. A party or its agent in, for the record, Small v. Village of Addison, 171 Hill Avenue, 3D, 344, 2nd District, 1988, a party or its agent may not defeat a motion for summary judgment by filing affidavits which conflict the person's sworn testimony. And in fact that's exactly what occurred here. The second point, and of course within that, and the 4th District here has decided to permit this for its power of maintenance, 388 Hill Avenue, 3D, 352, 4th District, 2009, the purpose of judicial admissions are to remove the temptation to commit perjury and hold a party to its waiver of proof on a factual issue of trial. And of course I'll wrap up now where I started here. The judicial admissions that Judge Schumpauer delineated in his memorandum of order and opinion are the summary of the issues so decisively decided, if you will, that those six admissions set forth, and of course the frustration for Colter, or excuse me, for Bentley to in effect relitigate the case, he filed his affidavit in fact disputing, so in fact of course not as in evidentiary admission where he explains or clarifies, but rather his affidavit directly contradicting his prior testimony. So it's not that the trial court entirely disregarded the filing of the affidavit as Bentley alleges, it's that the trial court considered the affidavit and appropriately, because of its direct contradiction, gave it apparent by the judge's opinion little weight and in fact again decisively ruled that these six factual issues were judicially admitted and in fact removed from contention in this case. And so statements that Judge Schumpauer found clear, concise, deliberate, unequivocal, and all this before the counter affidavit was filed, the court in fact mentioned the counter affidavit in its brief, but it's Colter's position that in fact it was not even necessary to analyze. Now, moving forward to a judicial mission, the issue of a statement of a party, and Colter cited Constec Products Incorporated versus Liberty Mutual Fire Insurance Company, 401 LF 3B 83, 1st District, 2010, a rather new case, and I think the writing speaks for itself, but within the parameters of this case, we're talking a judicial mission, same players, same case number, a motion for Lee to file this third-party complaint within the same case, granted by the trial court, and of course shortly thereafter, third-party complaint, Darla Colter, third-party plaintiff, Rick Bentley or Ricky Bentley, third-party defendant, and even shorter from there, a motion for summary judgment filed, in that these issues have been decisively stated open court, under oath, and subject to both direct, cross, redirect, recross, and I know Bentley has raised some issue that he in fact did not have an attorney at that case, but I don't think that's relevant for this court's analysis. Well, was he in the same posture when he was a witness as he is now? He was in the same posture as far as the factual situation. He was not in the same posture as a named party. And of course, in the briefs in Bentley's Supreme Court Rule 216e, I think that's been very, as far as the Supreme Court rules have been, very careful to keep that exclusive to request to be admitted. That's not the situation here. Colter's side of the herbary, Supreme Court Rule 212-2, and in fact, nothing from the plain reading of Supreme Court Rule 212-2 puts a limit on an admission so argued by Bentley, and neither in Bentley's brief or by argument today has he cited any particular statutory authority, Supreme Court authority, or case law in supporting his position. And to conclude this particular section of my argument, what is important in the administration of this case, administration of justice, judicial economy, and so forth, and of course, most importantly, as applies to this particular situation with Herman B. Power Maintenance and Shmuel B. Village Madison, in a totality, what are we talking about here? What's the prejudice necessarily in Bentley here? What's the prejudice of the administration of justice? What, in fact, is accomplished here? And I think it's clear that the facts, as delineated, there is no reason to relitigate these same facts, and in fact, open the door of what's called in Herman B. Power Maintenance the temptation to commit perjury, which, in fact, the temptation may have already been fairly great, in that the counter-affidavit that I referred to, it appears Bentley has walked a tightrope, based on the testimony from the first hearing, of things that directly contradict and, quite frankly, are far from true. And what appears to be of utmost importance regarding judicial admissions is whether a party is currently a party in the action, and whether the substance, and this is the most important part, whether the substance of the proffered admission constitutes a judicial admission. If the substance constitutes a judicial admission, if it makes sense to hold the party to its waiver of proof, then, of course, the facts in this situation, it makes sense that the trial court was correct, and that these are, in fact, judicial admissions. And I feel it necessary to address this issue before this court as well, even though not raised at the trial court level, this was not raised by Bentley, and it was not raised to respond to Judge Schunkweiler either, but specifically speaking as to the count that Coulter sought summary judgment on, and referring to negligent misrepresentation, count one, and if, in fact, there is a conflict with Mormon doctrine and Mormon principles, and the short answer is no. And, of course, it's the doctrine of non-recoverable frustrated economic expectations should be exclusively contract, not tort. However, what we're referring to here doesn't violate that rule, and, of course, the court district recently, or fairly recently, in Lowman v. Freeman in 2006 discussed, again, these Mormon principles and cited Congregation of the Passion in the 1994 Supreme Court case, but the two exceptions to the Mormon doctrine principles where one intentionally makes a, or falsely misrepresents information is an exception to bringing a, in part, cause of action sees economic damages towards, or the other exception is where one is the business supplying information for the guidance of others in their business transaction and makes negligent representation. So, and to clarify this point here, in this particular case, and a little different than other cases, Bentley wears two hats here. On one hand, he's an individual owner and seller. And, arguably, in that situation, as an individual owner and seller, one could make the argument that he is in privy to contract with Holter and that a cause of action for negligent misrepresentation, or to satisfy the underlying facts, could be brought to contract and should be precluded in tort. On the other hand, he, Bentley, wears, in this hat, Bentley is not acting as an individual. He is acting as the only sole member of an architectural control committee, which has the express duty of the land covenants to approve or deny any home plans, floor plans, or building plans. So, in this situation, and of course, in his situation, wearing this hat, as a sole member of the architectural control committee, and with Holter then over here, there is no privity of contract in that situation. And, in that situation, Holter would have a very difficult time, if not an impossible time, bringing a contract action against Bentley, in this situation where, from the architectural control committee to her individually. And that's a different situation from when he wears this hat and sells the lot as an individual. So, those misrepresentations over here, at the architectural control committee, where he approves these plans, conveys that approval, that is actually, and it fits within that exception, he's in the business of supplying information for the guidance there, of her purchase, or others similarly situated, and that there fits in the exception of Mormon doctrine, where in fact, a cause of action for negligent misrepresentation is appropriate. And, again, not addressed by Mr. Weaver or the trial court, but I think pertinent to the discussion. And, finally, regarding summary judgment, the trial court's findings of fact, their six judicial admissions, appear to make it logically possible, if the trial court found those judicial admissions, then summary judgment for liability should fall in the trial court's opinion, which is otherwise very well written and reasoned, falls a little short there, because based on those admissions, logically it falls that summary judgment should be granted, that in fact, those two questions that remain to be answered at trial, are pertinent to consumer fraud and common law fraud, in that the deciding of those issues is not relevant to the negligent misrepresentation, because negligent misrepresentation is in itself the approval of the architectural control committee, which is Bentley. The negligent misrepresentation itself is his approval of these plans, which the court has found that he approved, whether it should approve them or not approve them, whether he paid close attention or whether he did not. And I have nothing further, but I'm open to questions. I don't believe there are any. Thank you. Rebuttal. Thank you. Very briefly, de novo review is the appropriate standard. Mr. Steigman correctly states, when we're talking about the purpose of judicial admissions, it's been stated that the purpose is to hold a party to its waiver as to an admitted fact. If you're not a party, you don't have an interest. There's no issue joined between you and some other which you can waive. That's the crux of the differentiation, I believe, that ought to exist between testimonial and evidentiary admissions, or judicial admissions and testimonial admissions. Mr. Steigman also argued that the court considered Bentley's affidavit and discounted it and found it wasn't credible in light of his other testimony. At this stage in the proceedings, Judge, it's not a matter of credibility. It's a matter of whether a genuine issue of fact exists. Look at the pleading, look at the issue, look at the testimony, look at what Darla Coulter offers, and you look at what Bentley offers, and there is a genuine issue of fact as to the approval with respect to Defendants Exhibit 4 and 3, etc., etc. That crucial issue. That, I believe, is why the court erred. And the only way the court could get to where it got to was to really ignore what Bentley said. Because of his prior testimony, the court said his prior testimony allowed the court to consider a waiver of that issue. That wasn't an issue for him at the time he gave the testimony. Thank you. Thank you. The court will take this matter under advisement and a brief...